## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FAHRAN ROBB,**

    **Plaintiff,**

       **v.**

**BROOKE ROLLINS, Secretary,**
**United Stated Department of Agriculture,**

    **Defendant.[1]**

**Civil Action No. 21-2056 (JDB/GMH)**

## <u>MEMORANDUM OPINION</u>

Plaintiff Fahran Robb was employed by the Department of Agriculture.  The Department terminated her for failing to follow instructions and conduct unbecoming a federal employee.  Robb challenged that decision before the Merit Systems Protection Board (MSPB), alleging that her termination was erroneous and violated federal antidiscrimination and whistleblower laws.  The Board rejected Robb's contentions, and she then brought her action in this Court.

Before the Court now is Magistrate Judge Harvey's comprehensive 81-page report and recommendation on the Department's motion for summary judgment.  <u>Robb v. Rollins</u>, Civ. A. No. 21-2056 (JDB/GMH), 2025 WL 1580849 (D.D.C. June 4, 2025).  The report reflects Judge Harvey's careful analysis and conclusion that the Court lacks jurisdiction to hear several of Robb's claims and should grant summary judgment to the Department on the remainder.  For the reasons below, this Court agrees.

---

[1] Secretary of Agriculture Brooke Rollins has been substituted as the defendant under Federal Rule of Civil Procedure 25(d).  The original defendant was then-Secretary of Agriculture Thomas J. Vilsack.  <u>See</u> Compl. [ECF No. 1].

## BACKGROUND

The background to this dispute is fully detailed in Judge Harvey's report.  What follows is a brief treatment of salient facts related to Robb's claims.

### A.  Factual Background

Robb worked at the Department from 2013 until 2020 in various roles related to international affairs and agricultural economics.  See Robb v. Rollins, (Robb I), Civ. A. No. 20-929 (GMH), 2025 WL 1025084, at *3–4, 8 (D.D.C. Apr. 7, 2025).  Robb's relationship with her colleagues deteriorated in 2017, when she confronted several colleagues with physically aggressive behavior and expletives.  Id. at *5.  Following these incidents, the Department gave Robb a Letter of Caution and Letter of Reprimand.  Id. at *5–6.

Robb contends that, around the same time, her managers removed some of her job duties and transferred them to a male employee.  Id. at *4.  She also "noticed that her mail was not arriving as expected," and reported the suspected mail tampering to her supervisor, Mayra Caldera.  Whistleblower Compl. [ECF No. 1-1] at 8–9.  Robb also requested and received several changes of disputed efficacy to make her workstation more ergonomic as an accommodation for her musculoskeletal disorders.  Robb I, 2025 WL 1025084, at *7 & nn.14-18.

On November 26, 2018, Caldera issued Robb a Notice of Proposed 5-Day Suspension for failing to follow instructions to return a performance evaluation in a timely fashion.  Id. at *6.  Soon after, Caldera issued Robb a Letter of Instruction requiring her to "cease and desist any/all communication regarding [her] 5 day suspension with parties not involved in the process," but excepting from the prohibition "any Civil Rights Staff or Office of Special [Counsel] Staff."  Notice of Proposed Removal [ECF No. 1-5] at 97; see also Initial Decision on Termination (MSPB Termination Decision) [ECF No. 41-3] at 8.  The letter also cautioned Robb that she must "not

2

bypass procedure" or "involve persons outside of proper procedure" and instructed her to "use the proper channels" when asserting her "rights related to [the] suspension."  Notice of Proposed Removal at 97.  The letter additionally directed Robb to stop making requests "regarding the moving of [her] workstation."  Id. at 97.

Less than one hour after Robb received the Letter of Instruction, she emailed various Department officials alleging that Caldera "had brought alcohol 'illegally' into the building on multiple occasions."  See MSPB Termination Decision at 47–48; see also Whistleblower Compl. at 9.  Robb also reported mail tampering again—this time to the Office of the Inspector General Ombudsman and the Ethics Office for Trade and Foreign Agricultural Affairs—and charged that her five day suspension was retaliation for her whistleblowing.  Whistleblower Compl. 10.  Then, Robb sent two emails to several Department personnel claiming that Rodney Grimes, a facilities management employee, had determined her workstation was unfixable and recommended her relocation to a new office.  See MSPB Termination Decision at 24–26.  Later that day, Grimes asserted—and his supervisor corroborated—that he had made no such representations.  See Notice of Proposed Removal at 64–65.

On April 2, 2019, Robb's security clearance was suspended, and on April 4, 2019, Caldera issued Robb a Notice of Placement on Administrative Leave.  See Notice of Proposed Removal 16.  The Notice prohibited Robb from "contact[ing] any employees of the Agency or Department with regard to any work matters, unless specifically authorized to do so," except employees in the "EEO [(Equal Employment Opportunity)], EAP [(Employee Assistance Program)], Union Officials/Reps, NFC [(National Finance Center)], or EPP [(Employee Personal Page)] as appropriate."  Id.

Nevertheless, over the next five months, Robb sent Department employees six emails relating a long list of grievances with her perceived mistreatment. These emails were directed to various Department employees who did not work in the units that the Notice of Placement on Administrative Leave permitted Robb to contact.[2] See MSPB Termination Decision at 10–12, 18–19. The emails included content pertaining to Robb's employment status, allegations of Department misconduct against third parties, and inquiries into unrelated Departmental initiatives. Id.

On March 18, 2020, Caldera proposed that Robb be removed from federal service. Notice of Proposed Removal 1–10. The proposed removal was based on two charges: Charge 1—"Failure to Follow Instruction[s]"—contained six specifications, one for each of Robb's emails, which allegedly violated the April 4, 2019, Notice of Placement on Administrative Leave because they were sent to officials outside the "limited exception[s]" provided for. Id. at 1–4. And Charge 2— "Conduct Unbecoming [a Federal Employee]"—which included two specifications, one for each of the two emails Robb sent falsely claiming Rodney Grimes had recommended that she be allowed to move workstations. Id. at 4. The Notice of Proposed Removal was reviewed by another supervisory Department employee, who found that a preponderance of the evidence supported all charges and that Robb should be dismissed from federal service. See Decision on Proposed Removal [ECF No. 1-14].

---

[2] Robb sent emails to Administrator of the Foreign Agricultural Service Ken Isley; Under Secretary of Agriculture for Trade and Foreign Agricultural Affairs Ted McKinney; Chief of the Personnel Security Branch Carlena Fitzhugh; Chief of the Personnel and Document Security Division Brodrick Wilcox; his employee Christina Mitchell; the OIG Ombudsman; head of the Office of Process, Product, Trade Regulations in the Office of Agreements and Scientific Affairs Karina Ramos; various other Department employees; and "SM.OASCR.DCWA3"—an address related to the Department's Office of the Assistant Secretary for Civil Rights. See MSPB Termination Decision 10–12, 18–19.

### B.  Procedural Background

Separate from the current proceedings, Robb filed an EEO complaint related to alleged discrimination and retaliation that occurred prior to her termination.  See Robb I, 2025 WL 1025084, at *8.  The EEOC rejected those claims, and Robb sued in federal court in Robb I.  The judge granted in large part the Department's motion for summary judgment, leaving only a failure to accommodate claim and two retaliation and discrimination claims on which the Department did not move for summary judgment.  Id. at *8, 20.  The parties incorporate various arguments and evidence from that case, which was consolidated with this one exclusively for discovery.

Robb also brought two complaints to the MSPB.  In one, she maintained that numerous adverse actions—including the letter of reprimand and five-day suspension—were reprisals for protected whistleblower activity.  Whistleblower Compl. at 17–18.  In the other, she alleged the Department's decision to remove her was erroneous, retaliation for whistleblowing, and discriminatory.  See Termination Compl. [ECF No. 1-7] at 2.  The two cases were heard in a single administrative hearing but resulted in two separate decisions.  See generally MSPB Termination Decision; Initial Decision on Whistleblower Complaint [ECF No. 41-4] ("MSPB Whistleblower Decision").

The Board sustained each of the Department's cited charges for termination.  On the charge for failure to follow instructions, the Board concluded that the February 27, 2019, Letter of Instruction and April 4, 2019, Notice of Placement on Administrative Leave clearly and validly instructed Robb not to communicate with Department employees beyond the specified exceptions.  MSPB Termination Decision at 6–7.  The Board held that each of the six emails that Robb sent after the April 4 Notice violated those instructions.  Id. at 20.  On the charge for conduct unbecoming a federal employee, the Board found Robb's claim that Grimes had recommended

that her workstation be moved was not credible, and instead credited Grimes's testimony that he had <u>not</u> made such a recommendation. <u>Id.</u> at 24, 27. The Board also found that Robb was not terminated in retaliation for whistleblowing because she had not shown that any of her alleged whistleblower activities were motivating factors in her termination or any adverse personnel action. <u>Id.</u> at 42–49; MSPB Whistleblower Decision. Finally, the Board concluded that termination was an appropriate sanction for the Department's charges against Robb. MSPB Termination Decision 50–54.

Robb next challenged the Board's decisions in federal court. She asserted that the Department lacked sufficient cause for termination and additionally engaged in gender discrimination and retaliation under Title VII, disability discrimination and retaliation under the Rehabilitation Act, and whistleblower retaliation under the Whistleblower Protection Act. The case was referred to Judge Harvey, who was presiding over <u>Robb I</u>, to consolidate the discovery process. <u>See</u> Mot. to Consolidate Cases [ECF No. 15]. At the conclusion of discovery, the parties consented to Judge Harvey's jurisdiction for full case management. <u>See</u> Order Referring Case to Judge Harvey [ECF No. 31]. The Department then moved for summary judgment and Judge Harvey issued his report and recommendation. Judge Harvey recommended dismissing Robb's Rehabilitation Act claims for lack of jurisdiction and granting the Department summary judgment on the remaining claims. Robb has filed objections to Judge Harvey's report. <u>See</u> Fed. R. Civ. P. 72(b)(2).

## <u>STANDARD OF REVIEW</u>

A district court reviews portions of a magistrate judge's recommendations to which objections are made <u>de novo</u>. Local Civ. R. 72.3(c); <u>see also</u> 28 U.S.C. § 636(b)(1). But "when a party makes conclusory or general objections, or simply reiterates his original arguments, the Court

reviews the Report and Recommendation only for clear error." <u>M.O. v. District of Columbia</u>, 20 F. Supp. 3d 31, 37 (D.D.C. 2013) (quotation omitted). Ultimately, the court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The "failure to present an argument to the Magistrate Judge constitutes a waiver of that argument." <u>Taylor v. District of Columbia</u>, 205 F. Supp. 3d 75, 89 (D.D.C. 2016) (citation omitted).

To prevail on summary judgment, the moving party must show that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the employment discrimination context, courts must proceed with "special caution" due to the "potential difficulty for a plaintiff . . . to uncover clear proof of discriminatory or retaliatory intent." <u>Nurriddin v. Bolden</u>, 40 F. Supp. 3d 104, 115 (D.D.C. 2014) (citation modified), <u>aff'd</u>, 818 F.3d 751 (D.C. Cir 2016). Nevertheless, a nonmoving plaintiff must still proffer "specific facts" that rise above "conclusory allegations" that show "there is a genuine dispute requiring trial." <u>Id.</u> (citation modified).

The standard of review for Merit Systems Protection Board (MSPB) decisions depends on the nature of the plaintiff's claim. Claims that allege discrimination or retaliation are reviewed <u>de novo</u>. <u>Koch v. White</u>, 251 F. Supp. 3d 162, 170 (D.D.C. 2017). Otherwise, "the court considers only whether the decision was 'arbitrary or capricious, obtained without compliance with lawful procedures, unsupported by substantive evidence, or otherwise not in accordance with law.'" <u>Id.</u> (quoting <u>Barnes v. Small</u>, 840 F.2d 972, 979 (D.C. Cir. 1988)). Finally, when the MSPB decision is "predicated on credibility assessments," it is "virtually unreviewable" and a court may not entertain "a plaintiff's <u>de facto</u> request for the Court to "re-weigh conflicting evidence." <u>Robinson v. Duncan</u>, 775 F. Supp. 2d 143, 157 (D.D.C. 2011) (quotation omitted).

<u>**Analysis**</u>

This Court must now consider Judge Harvey's report and recommendation on the Department's motion for summary judgment. The Department argues that the decision to remove Robb was correct and that Robb's discrimination and retaliation claims are meritless. Judge Harvey has recommended granting the Department summary judgment or otherwise dismissing the Department's claims. Because this Court agrees, the Department's motion for summary judgment is granted.

## I.    Wrongful Termination (Count IV)

The Department brought two charges against Robb: one for failure to follow instructions and another for conduct unbecoming a federal employee. The Board concluded that those charges were supported by a preponderance of the evidence and that removal was an appropriate sanction. Now, Robb contends the Board and the Department were wrong.

In response to Judge Harvey's report and recommendation, Robb largely reiterates arguments from her opposition to summary judgment, so the Court reviews those for clear error. <u>M.O.</u>, 20 F. Supp. 3d at 37. And because these arguments are unrelated to discrimination, the Court's review is doubly deferential. <u>See</u> <u>Koch</u>, 251 F. Supp. 3d at 170.

### A.  Failure to Follow Instructions

To prove a failure to follow instructions, "an agency must establish that an employee (1) was given proper instructions, and (2) failed to follow the instructions, without regard to whether the failure was intentional or unintentional." <u>Erb v. U.S. Dep't of the Treasury</u>, No. 21-1756, 2024 WL 1110340, at *5 (Fed. Cir. Jan. 24, 2024) (quotation omitted). Robb argues that this charge is factually baseless.

As a challenge to the MSPB's analysis of the factual record, this is reviewed for substantial evidence.  See Hornsby v. Pulte, Civ. A. No. 23-3204 (RC), 2025 WL 2659471, at *6 (D.D.C. Sept. 17, 2025).  Substantial evidence is a deferential standard that requires "more than a mere scintilla" of support but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quotation omitted).  A conclusion may be supported by substantial evidence even if there is a plausible alternative interpretation.  Robinson v. Nat'l Transp. Safety Bd., 28 F.3d 210, 215 (D.C. Cir. 1994) (quotation omitted).

The Board concluded that Robb failed to follow instructions because she sent six emails to Department employees outside certain specified exceptions after being directed not to do so.  Robb contends that the Department's notice was unclear and, alternatively, that she complied with the notice's requirements.  See Obj. to R. & R. [ECF No. 64] at 6–7, 12–13.  She is mistaken.

The Department's instructions to Robb were clear.  In the February 27, 2019, Letter of Instruction, the Department instructed Robb "to refrain from contacting the named individuals, high level officials, regarding processes in which they were not involved" and that "[m]oving forward," she must "not bypass procedure."  MSPB Termination Decision at 8 (quoting Notice of Proposed Removal at 97).  Then, in the April 4, 2019, Notice of Placement on Administrative Leave, Robb was again instructed to refrain from contacting Department employees except for the EEO staff, the Employee Assistance Program, union officials and representatives, the National Finance Center, and the Employee Personal Page.  See id. at 7.  The Board noted that Robb was aware of the procedure for filing EEO complaints and Robb admitted in her testimony that she knew that the officials she contacted "had no involvement in the EEO process."  Id. at 9–11.

Although Robb contends the February 27, 2019, letter was vague, the Board appropriately rejected Robb's alternate construction (which would allow her to contact "any and all agency employees, no matter their position, grade, job duties, or department, regarding any matter concerning a claim of discrimination concerning her or any other employee") as "patently unreasonable." Id. at 9.  The Board also found Robb's testimony that she misunderstood the import of the letter to not be "genuine[ ]," "credib[le]," or "reliab[le]."  Id.  This Court, accepting the Board's credibility determination, as it must and as Judge Harvey also did, concludes that Robb was on notice that she was prohibited from communicating outside the dispute-management process after the February 27, 2019, Letter of Instruction and the April 4, 2019, Notice of Placement on Administrative Leave.

Robb failed to follow that prohibition.  Although she contends that she complied because her emails "complained about discrimination," Resp. to Mot. for Summ. J. ("Resp.") [ECF No. 46] at 6, this is plainly wrong.  Even if the emails mentioned discrimination, the Department instructed Robb to refrain from communicating with employees outside specific dispute-resolution channels.  Robb does not dispute that the employees she contacted worked outside of those channels, and she admittedly knew that several of the employees were not part of the EEO process. MSPB Termination Decision at 7–9.

And, as the Board correctly concluded, the emails at issue either "did not address discrimination issues or included other unrelated issues."  MSPB Termination Decision at 6; see id. at 10 (September 30, 2019, email "alleged that there was tampering of evidence in regard to an investigation being conducted into [plaintiff's] conduct toward another employee"); 12–13 (October 1, 2019, email "asked about a potential lunch with an agency employee, sought direction regarding her involvement in the Future Farmers of America (FFA), and requested assistance in

returning to work"); 14 (September 3, 2019, email contained "no mention of any discrimination"); 16 (July 11, 2019, email alleged that various employees acted unethically and violated Department policies); 17 (August 12, 2019, email alleged "additional ethical violations against an attorney at the agency"); 19 (April 29, 2019, email requested "'an immediate cease and desist action' regarding the security clearance suspension and requested reassignment"). Robb does not contend that any of the Board's specific descriptions of her emails are inaccurate. Nor does she argue that the indisputably non-discrimination-related content in her emails was permitted by the Department's restrictions on her communications.

Robb also contends that she should not have been disciplined because "the record is devoid of any complaints made by" the recipients of her communications. Obj. to R. & R. at 10. But Robb does not explain why the recipients' subjective reactions to her conduct would impact the Board's determination that she failed to follow instructions. Nor could it. A charge for failure to follow instructions is proper when the employee was given proper instructions and failed to follow them. Erb, 2024 WL 1110340, at *5. The Department has carried that burden, so the Board's decision, and Judge Harvey's conclusion, is affirmed.

## B. Conduct Unbecoming a Federal Employee

The Board found that Robb engaged in conduct unbecoming a federal employee when she sent colleagues "unsubstantiated assertion[s]" that Department facilities management had recommended she be moved to a preferred workstation. MSPB Termination Decision at 22. Robb only challenges the Board's application of law to fact, so this Court reviews for substantial evidence. See Hornsby, 2025 WL 2659471, at *6.

The Board determined that Robb misrepresented conversations with Grimes to secure a different workstation. MSPB Termination Decision at 27. Robb claimed that Grimes found her

keyboard tray to be defective and recommended that she be moved to another office.  Id. at 21–22.  Grimes testified that there was "nothing wrong" with the keyboard tray and that he had told Robb that he had no authority to relocate her.  Id.  The Board concluded that Grimes's version of events was "far more credible" than Robb's, because facilities maintenance personnel do not assign employees to workstations and because Robb's supervisor also corroborated Grimes's version of events shortly afterward.  Id. at 24.  The Board then concluded that Robb disseminated "untruthful information" by sending colleagues two emails asserting that her desk could not be fixed, and that Grimes recommended her relocation.  Id. at 27.  This record demonstrates that the Board's decision is supported by considerably more than a "mere scintilla" of evidence.

Robb's only other argument is that Grimes's testimony is "disproven" by evidence such as an ergonomics report, alleged inconsistencies in Grimes's testimony before the Board, and an affidavit she has proffered.  Resp. at 7.  But this amounts to an attempt to re-weigh the evidence and overturn the Board's credibility determinations.  That is beyond the scope of this Court's review.  See Robinson, 775 F. Supp. 2d at 157.  Accordingly, this Court, like Judge Harvey, rejects Robb's arguments and the Board's decision is therefore affirmed.

### C. Penalty

Penalty determinations are "committed primarily to the discretion of the employer." Wilson v. U.S. Dep't of the Army, 625 F. App'x 543, 546 (Fed. Cir. 2015).  When reviewing penalties, the Board considers whether the employer evaluated twelve relevant factors and exercised managerial judgment "within tolerable limits of reasonableness."  Douglas v. Veterans Admin., 5 M.S.P.B. 313, 329 (1981).[3]  In turn, a court must uphold a penalty unless it violates a

---

[3] The twelve factors are:

(1) [t]he nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

rule or statute, or otherwise constitutes an abuse of discretion.  McIntosh v. U.S. Dep't of Def., 53

F.4th 630, 638 (Fed. Cir. 2022) (quoting Villela v. U.S. Dep't of the Air Force, 727 F.2d 1574,

1576 (Fed. Cir. 1984)).

The Department considered the relevant Douglas factors and concluded that dismissal was

warranted.  It concluded, inter alia, that Robb's misconduct was "repeated and intentional" (factor

1), comprised a pattern of "repeated failure to follow instructions" (factors 3 and 5), that Robb's

lack of remorse indicated that rehabilitation was unlikely (factor 10), and that there were no

mitigating circumstances (factor 11).  Ex. U to Mot. for Summ. J. at 2–4, Robb I, 2025 WL

1025084, ECF No. 56-23.  In light of those considerations, the Department concluded that Robb's

conduct adversely impacted the Department's "ability to meet its overall goals" and, as such,

"removal [was] warranted."  Id. at 4–5.

The Board concluded that the Department appropriately considered the relevant factors and

that removal was within the limits of employer discretion.  The Board explained that "inappropriate

conduct is disruptive to the workplace" and the Department "has a right to expect its employees to

be honest, trustworthy, and candid."  MSPB Termination Decision at 54.  This conclusion is

---

(2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3) the employee's past disciplinary record;

(4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(7) consistency of the penalty with any applicable agency table of penalties;

(8) the notoriety of the offense or its impact upon the reputation of the agency;

(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question

(10) potential for the employee's rehabilitation;

(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.  Douglas, 5 M.S.P.B. at 331–32.

consistent with prior MSPB determinations that removal is appropriate where an employee fails to follow instructions and shows no remorse.  See Erb, 2024 WL 1110340, at *3 (finding that "removal for failure to follow instructions is not an unreasonable penalty" even when the employee has a history of superior performance); see, e.g., Redfearn v. U.S. Dep't of Labor, 58 M.S.P.R. 307, 316–17 (1993).

Robb does not contend that the Department misapplied any specific Douglas factor.  Her only argument against the penalty is that her ultimate removal would not have occurred without her prior suspension.  But instead of arguing that her prior suspension was improper, Robb merely directs the Court to her contentions in Robb I.  Resp. at 5 ("The Plaintiff herein relies on the arguments made in Robb Case 1, Dkt. 59, pages 13–15 and the exhibits cited thereto.").  But that court rejected those arguments, see Robb I, 2025 WL 1025084, at *17, and this Court will not reconsider them here.  Accordingly, this Court finds the penalty of removal is not an abuse of discretion.

## II.    Gender Discrimination (Count I)

Robb does not object to Judge Harvey's recommendation that the Government should prevail on the merits of Count I, her Title VII gender discrimination claim.  This Court reviews for clear error, finds none, and enters summary judgment for the Government.

Title VII provides that "[a]ll personnel actions affecting [federal] employees or applicants for [federal] employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  To prevail on a Title VII employment discrimination claim, plaintiffs must initially establish by a preponderance of the evidence that they are (1) a member of a protected class; (2) suffered adverse employment action; and (3) were treated differently from similarly situated employees outside the protected class.  See McDonnell

14

Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Then, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the challenged action.  Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981).  Finally, the burden shifts back to the plaintiff to demonstrate that the employer's reason is a pretext masking discrimination.  See Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009).  A court may grant summary judgment when the employer articulates legitimate, non-discriminatory reasons for its actions, in which case "the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case."  Brady v. Off. of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).

Here, the Department provides a legitimate justification for removing Robb.  Robb was terminated "because of her well-documented six instances of failure to follow instructions and due to conduct unbecoming, which included being untruthful."  Mem. in Support of Mot. for Summ. J. ("Mot.") [ECF No. 41-1] at 18–22.  As discussed above, and at length by Judge Harvey, the Department's proffered reasons are supported by a preponderance of the evidence.  Having established legitimate, nondiscriminatory reasons for termination, the burden shifts back to Robb to establish that the Department's stated reasons are merely pretext for unlawful discrimination.

Robb fails to carry this burden.  As Judge Harvey concluded, Robb "makes no attempt to marshal evidence that would tend to show that she was terminated because of her gender."  Robb, 2025 WL 1580849, at *18.  Robb's briefing does not raise any evidence or provide arguments in support of her Title VII discrimination claim.  In her opposition to the Department's motion for summary judgment, Robb uses the word "gender" only once, and even then, only in the context of a hypothetical unrelated to showing that her employer acted out of animus.  Resp. at 10.  Robb's

objection to Judge Harvey's report and recommendation is similarly devoid of any argument in support of her Title VII claims.

Because the Government has provided nondiscriminatory reasons for terminating Robb, which Robb has not shown to be pretextual, the Court grants the Department summary judgment on this claim.

### III.   Disability Discrimination (Count II)

Robb objects to Judge Harvey's recommendation that the Court lacks jurisdiction over Count II, her disability discrimination claim.  This Court reviews this determination de novo and concludes that Judge Harvey is correct that this Court lacks jurisdiction.[4]

District courts lack jurisdiction to hear Rehabilitation Act claims unless the plaintiff has properly exhausted the administrative process.  Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006).  This is because the Act "limits judicial review to employees aggrieved by the final disposition of their administrative complaint."  Id. (internal quotation marks omitted).  The plaintiff "bears the burden of showing that [she] has exhausted" the appropriate administrative remedies by receiving a "final disposition."  Kelly v. Raimondo, Civ. A. No. 20-3203 (RDM), 2022 WL 14807447, at *6–7 (D.D.C. Oct. 26, 2022).  A claim that is withdrawn during an administrative proceeding is not exhausted.  See, e.g., Houser v. Shulkin, 264 F. Supp. 3d 17, 22 (D.D.C. 2017) (finding that where the plaintiff "did not . . . fully litigate [her claim] before the MSPB, she failed to exhaust her administrative remedies").  Because exhaustion is jurisdictional, a court must consider it regardless of whether it was raised by the parties.  See Flaherty v. Ross, 373 F. Supp. 3d 97, 103 (D.D.C. 2019).

---

[4] Having found a lack of jurisdiction, this Court will not reach the merits of Robb's disability discrimination claim.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (internal quotation marks omitted)).

Robb withdrew her Disability Act claims before the MSPB and so failed to exhaust the administrative process. Summ. of MSPB Conference Call ("Call Summ.") [ECF 1-8] at 1; MSPB Termination Decision at 42. In a conference call between Robb, the Department, and MSPB Administrative Judge Zamora to address the scope of Robb's "removal appeal," Robb "withdr[ew] her claim of disability discrimination including her claim of retaliation for requesting reasonable accommodation." Call Summ. at 1. In its ultimate decision, the Board again noted that when Robb was asked "to provide additional information regarding [her disability discrimination and retaliation] claims prior to hearing," she stated that those claims "were not an issue in this appeal." MSPB Termination Decision at 42.

Robb disagrees. She argues that the claims she withdrew were <u>different</u> disability discrimination and retaliation claims related to <u>Robb I</u>, concerning the Department's alleged failure to provide reasonable accommodations, not her termination. Obj. to R. & R. at 2. Robb argues that her interpretation is correct because the Board characterized her withdrawn argument as "disability discrimination based on the agency's failure to accommodate a disabling condition," as opposed to disability discrimination associated with termination. MSPB Termination Decision at 42. Robb also explains that she informed the Board that the withdrawn claim was "pending before the Federal District Court"—<u>i.e.</u>, in <u>Robb I</u>. So Robb argues that her Rehabilitation Act claims related to wrongful termination were fully presented to the Board and are now properly before the Court.

She is incorrect. The claim at issue is related to Robb's alleged request for "reasonable accommodation," but only insofar as she alleged that the Department discriminated and retaliated against her for seeking that reasonable accommodation <u>by terminating her</u>. In her administrative complaint, Robb specifically referred to her discrimination and retaliation claims as reasons her

termination was wrongful.  Termination Compl. at 23.  In her initial brief before the Board, Robb raised her Rehabilitation Act claim as an argument for overturning her discharge, and there is no reference to a separate Rehabilitation Act claim unconnected to her termination.  Id.  This is confirmed by Robb's conference call with Administrative Judge Zamora, where the Judge characterizes Robb's disability discrimination and retaliation claim as an "affirmative defense" to the Department's termination decision.  Call Summ. at 1.  Likewise, the fact that the ultimate decision does not include any discussion of disability discrimination claims other than those Robb withdrew suggests that there was no second set of non-withdrawn claims.  MSPB Termination Decision 42.  Robb may have <u>believed</u> the claims she withdrew were already "pending before the Federal District Court" in <u>Robb I</u>, but the only Rehabilitation Act claims discussed in any of the MSPB records—Robb's initial complaint, the conference call summary, and the ultimate decision—refer to a single set of discrimination and retaliation claims.

Accordingly, this Court finds that Robb did not exhaust her Rehabilitation Act discrimination claim.  The Court thus lacks jurisdiction to hear that claim, as Judge Harvey properly concluded, so it must be dismissed.

## IV.    Rehabilitation Act and Title VII Retaliation (Count III)

Robb objects to Judge Harvey's recommendation that the Court lacks jurisdiction over her Rehabilitation Act retaliation claim and should grant summary judgment to the Department on her Title VII retaliation claim.  Those arguments are reviewed <u>de novo</u>.  The Court concludes that it lacks jurisdiction over the Retaliation Act claim and awards summary judgment to the Department on the merits of the Title VII claim.

### A.  Rehabilitation Act

The Court lacks jurisdiction over Robb's Rehabilitation Act retaliation claim for the same reason as it lacks jurisdiction over her Rehabilitation Act discrimination claim.  As explained, Robb withdrew her Rehabilitation Act claims before exhausting them.  Because failure to exhaust Rehabilitation Act claims is a jurisdictional bar to district court review, this claim must be dismissed for lack of jurisdiction.

### B.  Title VII

Title VII retaliation claims, like Title VII discrimination claims, follow a three-step burden-shifting framework.  Again, when a defendant has proffered a legitimate, nondiscriminatory rationale for its actions, courts proceed directly to the step three question of pretext.  Brady, 520 F.3d at 494.  Here, the Department has provided legitimate justifications for Robb's termination, so the Court will proceed to step three.  Importantly, Robb's burden to show pretext "is not whether [Robb] in fact contravened the letter of the management directive[s], but rather whether [her] supervisors 'honestly and reasonably believed' that [she] did."  Mason v. Geithner, 811 F. Supp. 2d 128, 205 (D.D.C. 2011) (citation modified).  If "the employer's stated belief about the underlying facts is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts."  Id. (internal citation omitted).

As discussed above, the Department argues that Robb was terminated for "repeatedly fail[ing] to follow her supervisor's instructions," including improperly bypassing disciplinary procedures by sending email to individuals unconnected with those proceedings "and [lying] to her superiors about the need for an office move."  Mot. at 21.  Because these reasons are facially legitimate, the burden shifts to Robb to demonstrate the Department's stated justifications are pretextual.

Robb first argues that she had a right to send the emails in question.[5]  Opp. to Mot. for Summ. J. at 22, Robb I, Civ. A No. 20-929, 2025 WL 1025084, ECF No. 59.  She points to an anti-harassment memorandum from Foreign Agricultural Service Administrator Isley that outlines various anti-harassment procedures and explains that complaints should be reported "to agency management."  Resp. at 6.  Robb also argues that she had a generally cordial relationship with some of the recipients of her messages.  Id.

These arguments, even if true, are insufficient to show pretext.  The evidence Robb proffers would only suggest that she believed she was entitled to send the emails, not that the Department did not "honestly believe" she disobeyed instructions.  Hartzler v. Mayorkas, Civ. A. No. 22-5310, 2024 WL 3219489, at *2 (D.C. Cir. June 28, 2024) (citation modified).  The question Robb must answer "is not whether" she "contravened the letter of the management directive," but whether the Department's stated rationale concealed the nefarious motive to punish an employee for engaging in a protected activity.  Mason, 811 F. Supp. 2d at 205 (citation modified).  Robb does not provide any evidence that the Department's stated belief that she failed to follow orders was pretext for illegal discrimination.

The various policies Robb points to, moreover, do not actually suggest that she had the right to send the communications at issue.  The Isley memorandum provides general guidance that victims of harassment should work with management to address their grievances.  Nothing in it suggests that employees should be free to ignore later-in-time, specific directions on how to channel their grievances.  They certainly do not imply, as Robb argues, that Department employees may involve any management-level official in their interpersonal disputes, regardless of whether the manager has harassment-related responsibilities, after being specifically directed not to.

---

[5] Instead of including substantive discussion of the merits in her briefing, Robb refers the reader to her Opposition to Defendant's Motion for Summary Judgment in Robb I.

Robb next raises the idea that the restrictions on her communications were unlawful. She argues that the restrictions violate the "participation clause" of Title VII which "forbids retaliation against an employee who 'has made a charge, testified, assisted, or participated <u>in any manner</u>' in a protected proceeding." Opp. to Mot. for Summ. J. 24, <u>Robb I</u>, 2025 WL 1025084, ECF No. 59. But the participation clause covers retaliation for participation in "protected"—<u>i.e.</u>, official, legal—proceedings. <u>Wang v. Wash. Metro. Area Transit Auth.</u>, 206 F. Supp. 3d 46, 76–77 (D.D.C. 2016) (internal citations omitted). Informal communications such as Robb's emails to her colleagues are covered by the "opposition clause," which only prohibits restrictions on "<u>reasonable</u> attempts to contest an employer's discriminatory practices." <u>O'Day v. McDonnell Douglas Helicopter Co.</u>, 79 F.3d 756, 763 (9th Cir. 1996) (emphasis added); <u>see, e.g.</u>, <u>Wang</u>, 206 F. Supp. 3d at 77–78 (finding that the opposition clause, not the participation clause, protected the plaintiff's email to Inspector General).

Courts have consistently held that restrictions on employee communications like the ones faced by Robb are reasonable. There is "nothing inappropriate" about "an instruction" that directs an employee "to raise [her] concerns through appropriate channels." <u>Mason</u>, 811 F. Supp. 2d at 204. Agencies routinely consider an employee's violation of such instructions as a legitimate reason for removal. <u>Byrd v. Vilsack</u>, 931 F. Supp. 2d 27, 44 (D.D.C. 2013); <u>see</u> <u>Rollins v. Fla. Dep't of Law Enforcement</u>, 868 F.2d 397, 399 (11th Cir. 1989) (finding employer did not act improperly where its actions were based on "the manner in which [the plaintiff] complained of discrimination, not on the fact that she complained"). Accordingly, there is no opposition clause problem with the garden-variety restrictions imposed on Robb.

Robb briefly contends that her circumstances are distinguishable from cases where communication restrictions have been upheld because her messages to colleagues were less

onerous and disrespectful.  But that misses the point: there is nothing unreasonable about requesting employees to raise complaints through the appropriate channels.  Failure to do so may not "create loud disturbances throughout the office," but it is "disruptive in its own way—by unnecessarily distracting senior agency officials from their responsibilities" and by "undermin[ing] . . . supervisory authority."  <u>Byrd</u>, 931 F. Supp. 2d at 44.  The restrictions on Robb's communications were clear and reasonable; Robb cannot now complain that she was disciplined for ignoring them.

Newly, in her objection to Judge Harvey's report and recommendation, Robb argues that her communications were protected by Office of Special Counsel policy.  Obj. to R. & R. at 9. This argument should have been briefed in Robb's opposition to summary judgment, because it relates to the core dispute of whether the communications at issue were permitted.  <u>See</u> <u>Taylor v. D.C.</u>, 205 F. Supp. 3d 75, 89 (D.D.C. 2016) (holding that arguments not raised before a magistrate judge cannot be raised on review).  But Robb did not discuss the Office of Special Counsel, OSC immunity, or any similar argument in her opposition.  She cannot raise the argument for the first time here.

Even on the merits, Robb's argument fails. She merely asserts that the Office of Special Counsel is entitled to investigate discrimination complaints and has historically directed agencies to limit restrictions on whistleblower communications.  Obj. to R. & R. at  8.  But Robb does not suggest that the OSC has taken issue with the restrictions imposed by the Department in this case. Nor does she dispute the Board's finding that her emails contained information that would not qualify as whistleblower material and so would not be protected in any event.  <u>See</u> <u>supra</u> Part I.

Accordingly, the Court grants the Department summary judgment on the Title VII retaliation claim.

### V.      Whistleblower Retaliation (Count V)

To prove a Whistleblower Protection Act violation, an employee must show that a protected disclosure—typically a violation of a law, rule, or regulation—was a contributing factor in an adverse personnel action.  See Johnston v. MSPB, 518 F.3d 905, 909 (Fed. Cir. 2008).  If the plaintiff makes that showing, the agency must demonstrate "that it would have taken adverse personnel actions against [the employee] even absent any protected disclosures."  Id. at 911.  In evaluating whether such claims are supported by substantial evidence, courts must consider (1) the strength of the agency's evidence in support of its action, (2) the existence and strength of any motive to retaliate on the part of the agency officials who participated in the decision, and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  McIntosh, 53 F.4th at 645.

The first factor weighs heavily against Robb because the Department validly charged her with failure to follow instructions and conduct unbecoming a federal employee.  This alone dooms Robb's claim, because strong evidence supporting an employer's action may "outweigh any role of the second and third" factors.  Baker v. Soc. Sec. Admin., Civ. A. No. 2024-1478, 2024 WL 4490303, at *5 (Fed. Cir. Oct. 15, 2024).  Having established that the Department validly terminated Robb, her whistleblower allegations cannot succeed.

Even if the Court moved beyond the first factor, Robb fares no better under the second.  The Board concluded that the Department had no motive to retaliate against Robb for purported whistleblowing because her allegations were meritless.

Robb first argues that her termination was motivated by the disclosure of suspected mail tampering.  Specifically, she contends that her supervisor intercepted and kept her mail to inconvenience her.  MSPB Termination Decision at 43–46.  In support, Robb alleges that she

23

stopped receiving a monthly magazine related to her work.  Id.  But Robb does not provide any evidence for the claim that her supervisor tampered with her mail, and the supervisor was never investigated or disciplined for mail tampering.  And the deciding Department official testified that the mail tampering allegation had no impact on Robb's termination.  Id. at 45–46.  Accordingly, the Board appropriately concluded that Robb's mail tampering allegation was not, by a preponderance of the evidence, a contributing factor in her termination.

Next, Robb contends that her termination was motivated by complaints that her proposed suspension violated a provision of her collective bargaining agreement.  Robb interpreted a provision of the agreement to mean that the agency had fourteen days to finalize a proposed discipline, which would have elapsed by the time Robb's five-day suspension was enacted. MSPB Termination Decision at 45.  But the Board correctly found that Robb "clearly misread" the collective bargaining agreement, which requires "that the final decision must be made at some time after receipt of the employee's response or after the 14 day time period for responding has passed."  Id.  By its plain terms, the agreement does not impose a 14-day deadline between the issuance of a proposed discipline and the final determination, it merely provides that a final decision must be made "at some time" after the employee's response or after the 14-day period for responding has passed.  Because Robb's interpretation of the collective bargaining agreement was wrong, the Board correctly determined it could not provide the basis for a retaliatory motive.  Id. at 46–47.

Robb also argued her termination was motivated by her disclosure that her supervisor brought alcohol onto Department premises.  Id. at 46.  But that cannot amount to a protected disclosure because "it is not illegal to have alcohol in the building."  Id. at 47.  The Department does require, by regulation, that parties apply for special permits to serve alcohol at celebrations

on-premises, but those permits do not require that the alcohol be removed afterwards, so the Board concluded the alcohol Robb saw could have been left over from a holiday celebration.  Id. at 47–48.  The very witness Robb proffered to corroborate her accusation explained "she had no knowledge of having seen or been aware of [the supervisor] ever bringing alcohol into the agency's facilities."  Id.  The Board thus appropriately disregarded this whistleblower claim.

Robb also briefly argues that her termination was motivated by a complaint she filed about her performance evaluation and another OSC complaint.  MSPB Termination Decision at 48–49.  But for both instances, Robb presented no evidence to suggest that decisionmakers considered, or even knew of, those complaints when making the removal decision.  Id. at 49–51.  Robb's assertions thus amount to bare speculation.  Without more, there is no basis for concluding that these disclosures gave Robb's supervisors a motive for removing her.  Because Robb's various arguments fail, the second factor also weighs in favor of the Department.

The third factor is "effectively removed from the analysis" because "no pertinent evidence was presented on [it]."  McIntosh, 53 F.4th at 646.  Accordingly, having considered the three factor test, the Court grants summary judgment to the Department.

### VI.    Other Acts of Whistleblower Retaliation (Count VI)

Robb does not object to Judge Harvey's analysis that the Court lacks jurisdiction over Count VI, a set of whistleblower complaints that Robb brought to the Board separately from her removal-related grievances.  Accordingly, this Court reviews only for clear error and, finding none, dismisses the claim for lack of jurisdiction.

Federal district courts do "not have subject matter jurisdiction over" MSPB appeals "brought [exclusively] under the Whistleblower Protection Act."  Montgomery v. Mayorkas, Civ. A. Nos. 23-cv-3931 (BAH), 24-cv-1697 (BAH), 2024 WL 4973406, at *5 (D.D.C. Dec. 4, 2024).

By default, appeals of MSPB decisions "should be filed in the Federal Circuit."  Kloeckner v. Solis, 568 U.S. 41, 49 (2012).  There are two relevant exceptions: appeals of standalone whistleblower claims must be "filed in any court of appeals of competent jurisdiction," Boyd v. U.S. Dep't of Veterans Affs., 808 F. App'x 1015, 1016 (11th Cir. 2020); see 5 U.S.C. § 7703(b)(1)(B), and appeals of "mixed" claims—those where the employee's MSPB complaint includes discrimination claims—must be brought in federal district court, 5 U.S.C. §§ 7702(a)(1); 7703(b)(1)(B); see also Kloeckner, 568 U.S. at 50.

Robb brought two separate complaints to the MSPB, which were consolidated for a final hearing before the Board and then brought together to this Court.  One complaint, now Count VI, only alleged whistleblower retaliation.  In that complaint, Robb claimed to have faced numerous adverse actions such as workstation reassignment, suspension, and revocation of her telework agreement as reprisals for her whistleblowing activity. Mot. at 3.  The other complaint, now Counts I through V, revolved around Robb's removal from federal service and included allegations of Title VII and Rehabilitation Act violations.  See Termination Compl.

This Court lacks subject matter jurisdiction to hear Count VI because it is a standalone whistleblower claim, not a mixed claim.  As a standalone whistleblower claim, it must be filed directly in a federal court of appeals.  Bell v. Esper, Civ. A. No. 18-cv-2277 (RC), 2019 WL 6910032, at *3 (D.D.C. Dec. 19, 2019).  And Robb did not even bother to address this issue in her opposition to summary judgment and her objections to Judge Harvey's report.

A district court may transfer a claim for lack of jurisdiction, but when neither party has requested transfer, the decision is "committed to the discretion of the District Court."  Halim v. Donovan, 951 F. Supp. 2d 201, 204 (D.D.C. 2013) (citation modified).  Several considerations militate against transfer here.  First, despite Judge Harvey specifically recommending that she

address transfer in her objections, Robb did not request one.[6] The Department, in contrast, opposed

transfer. <u>See</u> Response to Order of the Court [ECF No. 61]. Second, Robb is represented by

experienced counsel, who ought to have been aware of the requirement that standalone

whistleblower actions may not be brought in federal district court. <u>See</u> 5 U.S.C. § 7703. Lastly,

the D.C. Circuit disfavors partial transfer because "Section 1631 directs a court to transfer an

'action' over which it lacks jurisdiction, rather than an individual claim." <u>Hill v. U.S. Air Force</u>,

795 F.2d 1067, 1070 (D.C. Cir. 1986) (holding district court did not abuse its discretion by

declining to transfer claim when transfer was not requested).

Accordingly, Count VI is dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For these reasons, the Court dismisses Robb's Rehabilitation Act claims and Count VI

Whistleblower Protection Act claim and grants summary judgment to the Department on her

remaining claims.

This Court has been greatly aided in the assessment of these issues by the thorough and

excellent report and recommendation of Judge Harvey. Robb's objections to the report are denied.

A separate Order has been issued on this date.


/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>October 8, 2025</u>

---

[6] Robb's objection does include the oblique sentence "Count VI Should be Transferred to the D.C. Circuit Court of Appeals. - forget it," Obj. to R. & R. at 2, and does not mention transfer thereafter. The Court is unclear about whether this is an intentional concession that transfer is unwarranted, but it is certainly insufficient to constitute a bona fide request for transfer.